IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RONALD PETERSEN,<br><br>Petitioner,<br><br>vs.<br><br>MARTIN FRINK; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 12-125-M-DLC-JCL<br><br>FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE<br>(Claims 2 and 3) |

This case comes before the Court on Petitioner Petersen's application for writ of habeas corpus under 28 U.S.C. § 2254. Petersen, with counsel, filed an Amended Petition on October 31, 2014. Respondents ("the State") filed an Answer on January 14, 2015. Petersen replied on February 17, 2015.

Petersen's Amended Petition asserts three claims for relief:

1. Trial counsel were ineffective because they failed to challenge the validity of the arrest warrant bearing the signature of Judge Christopher and dated January 27, 2008. Am. Pet. (Doc. 39) at 22-28; *see also* Arrest Warrant at 1-2 (Doc. 26-6) at 7-8.

2. Trial counsel were ineffective because they failed to challenge the admissibility of Petersen's statements and the fruits of the search of his barracks room on the ground that his statements and consent to search were involuntarily coerced by the threat that Petersen's friends and family members would otherwise be charged. Am. Pet. at 29-30.

3. Petersen's guilty plea was the product of ineffective assistance of trial counsel because his counsel misrepresented facts and law to convince

1

him to plead guilty. *Id.* at 30-33.

Claim 1 is addressed separately. This document concerns the second and third claims. The relevant factual background is set forth in Part II.A of the document addressing Claim 1.

## I. Procedural Background

On February 25, 2015, the Court issued an Order explaining why it believed the record had to be developed and directing the parties to file a joint status report. The Order stated that, "If the warrant for Petersen's arrest was obtained in compliance with the Fourth Amendment, then Petersen's first two claims for relief must fail." Order (Doc. 46) at 7. A footnote added, "The third can be decided on the existing record." *Id.* at 7 n.1.

Upon further review of the Amended Petition, the Court finds that Petersen's second and third claims for relief do not allege the same factual bases for relief as the first claim. Their factual bases are different.

Although a petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review," *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolaus*") (Schroeder, C.J., concurring), Petersen's allegations in his second and third claims for relief do not meet that threshold. The second and third claims in the Amended Petition should be denied.

Because none of Petersen's allegations make an adequate showing that trial counsel was ineffective, his claims are also procedurally barred as insufficiently substantial to warrant excusing his default under the rule of *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911 (2013).

## II. Claim 2

Petersen's second claim alleges that trial counsel were ineffective because they failed to challenge the admissibility of his statements. The Amended Petition alleges that "Petersen has alleged that he was unlawfully coerced into making inculpatory statements . . . He has maintained that members of the Lake County Sheriff's Department threatened to arrest his friends and family if he did not confess to Wilson's homicide." (Am. Pet., Doc. 39 at 29-30 (citing Pet. Attachment, Doc. 1-1 at 8-10)).

That is not what Petersen alleged in his original petition. Petersen claimed he confessed to killing Wilson "[t]o keep Zach [Forkin] out of prison because he is innocent." (Pet. Attachment, Doc. 1-1 at 8.) He also contended that Detective Yonkin told him on the phone that Zack had been arrested. He contended that Yonkin further stated, "Fran [Forkin] seems like a nice lady. I hope it won't come to us having to arrest her, too." (*Id.*) And Petersen contended that his father and brothers "told me of threats made to them." (*Id.* at 9). Petersen did *not* say that

3

anyone made Petersen's confession a condition of others' freedom from arrest.

Although the Amended Petition relies on the facts alleged in Petersen's *pro se* submissions, the Amended Petition was filed by counsel. It is not entitled to liberal construction, and Petersen is not entitled to another opportunity to amend it.

Therefore, the question is whether Petersen's original, *pro se* allegations are sufficient to support inferences not only that the claim he waived by pleading guilty had merit but also that counsels' advice to plead guilty without having litigated the claim "rendered that advice outside the range of competence demanded of attorneys in criminal cases," *Tollett v. Henderson*, 411 U.S. 258, 268 (1973) (internal quotation marks omitted).

Petersen alleges no causal connection between the statements he claims Yonkin made about Zack and Fran Forkin and his own decision, hours later and 2,000 miles away, to make a detailed confession. That is, other than his own desire to absolve others of responsibility, Petersen alleges nothing that impelled him to confess or make a statement, as opposed to simply turning himself in. Yonkin's reported remarks to Petersen were not inherently coercive. Petersen does not allege he is of low intelligence or has an impairment that made him peculiarly susceptible to suasion. *See United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014) (en banc). He alleges no fact that imbued his own situation with the immediacy and emotion described in *United States v. Moreno*, 891 F.2d 247, 249-50 (9th Cir.

4

1989), *cited in* Am. Pet. at 29-30, much less that Yonkin or anyone else was aware of and exploited Petersen's feelings. There was no prospect that either of the Forkins would immediately be imprisoned for Petersen's crime unless Petersen confessed. Petersen does not allege he mistakenly believed such a thing to be possible, much less that the officers involved in taking his statement recognized his mistake and exploited it.

Petersen's claim regarding "threats" received by his father and brothers is merely conclusory. Even taking his allegations about the Forkins as true, his claim mistakes conscience for compulsion and alleges nothing more than the inevitable stress ordinarily associated with a murder investigation. There is no reason to suspect he might have been able to show that his confession was "unlikely to have been the product of a free and rational will." *Preston*, 751 F.3d at 1016. Neither prong of the *Strickland* test is met. This claim should be denied.

### III. Claim 3

Petersen's third claim alleges that counsel coerced him to plead guilty by telling him lies and misrepresenting facts. Again drawing on some of the facts Petersen alleged in his original petition (*see* Am. Pet. at 31 (citing Pet. Attachment, Doc. 1-1 at 10-12 [in Petersen's pagination]; Resp. to Order, Doc. 12 at 3-6)), the Amended Petition describes three, or possibly four, ways in which counsel coerced Petersen's plea. The Amended Petition also rests on Petersen's assertion that, were

5

it not for counsel's coercion in these respects, he would not have pled guilty but would have gone to trial. Again, the Amended Petition is not entitled to liberal construction, and Petersen is not entitled to another opportunity to amend.

### A. Strength of the Evidence

The Amended Petition alleges that Petersen alleged that trial counsel did not permit Petersen to listen to or view recordings of statements made by Ryon Gates, Zack Forkin, and N. and that counsel "misinformed [Petersen] about what the state's witnesses said and falsely stated that N. was 'wishy-washy' and would not present well at trial." (Am. Pet., Doc. 39 at 31).

> Petersen alleged:
> I was not allowed to view the electronic media use [sic] as evidence against me, such as the recordings of witness interviews, until after I had already accepted the plea, and even then I only managed to see a fraction of them. Instead, my public defenders deliberately misrepresented their contents in order to manipulate me into accepting their plea agreement. One specific instance of this is the false description of the testimony of N.[] as "wishy-washy" and "weak," despite the strength of it that I later saw. Remember, N. is the little girl that was raped by my supposed victim, and is the star witness to an affirmative defense of justifiable use of force.

(Pet. Attachment, Doc. 1-1 at 12).

Neither the Amended Petition nor the cited portions of Petersen's *pro se* submissions describe how counsel "deliberately misrepresented" (*id.*) the videotaped interviews of Gates and Zack Forkin. If counsel had in mind other witnesses he does not name, he again fails to identify anything counsel got wrong

6

about "what the State's witnesses said" (Am. Pet., Doc. 39 at 31). These allegations do not come close to supporting an inference that counsel's performance was unreasonable. This portion of Petersen's claim should be denied.

Because Petersen does not identify anything false or misleading about what counsel told him, his claim amounts to an allegation that the Sixth Amendment is violated when a lawyer fails to arrange for his client to view and listen to recordings in jail rather than simply describing for his client the evidence against him. One of the most useful functions of counsel is to view things more like a juror or judge is likely to view them, even if (especially if) that leads to a very different opinion than the client formulates on his own. This aspect of Petersen's claim should be denied.

In addition, Petersen's allegations concerning N. are particularly misguided. Petersen claims that N.'s statements about what Wilson allegedly did were not "weak" or "wishy-washy," as his lawyers told him before he pled guilty, but strong. (Resp. to Order, Doc. 12 at 3). Although reasonable people could and often do disagree about the "strength" of a given statement, even that is beside the point.

In the portion of the original, *pro se* petition cited by the Amended Petition, Petersen alleged that N.'s testimony could have been used to support a defense of justification. (Pet. Attachment, Doc. 1-1 at 12). Under Montana law, a defendant acts with justification if he:

7

> reasonably believes that the conduct is necessary for self-defense or the defense of another against the other person's imminent use of unlawful force. However, the [defendant] is justified in the use of force likely to cause death or serious bodily harm only if the person reasonably believes that the force is necessary to prevent imminent death or serious bodily harm to the person or another or to prevent the commission of a forcible felony.

Mont. Code Ann. § 45-3-102 (2007).

When a defendant claims ineffective assistance of counsel, "[a]n assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed." *Strickland*, 466 U.S. at 695. Here, there is no reasonable probability that a reasonable juror would find that Wilson threatened "imminent" use of unlawful force or that Petersen "reasonably" believed he did so. There is no reasonable probability that a reasonable juror would believe that, to "prevent" harm to N. or to "prevent" a forcible felony that happened, if at all, two months earlier, it was "reasonable" for Petersen to believe it "necessary" to sneak into Wilson's home while he was sleeping and shoot him four times. Even if Petersen could establish that counsel were "wrong" in something as nuanced as their description of N.'s likely presentation as a witness, Petersen was not remotely prejudiced.

None of Petersen's allegations meets the second prong of the *Strickland* test.

8

This claim should be denied.

**B. False Newspaper Story**

The Amended Petition alleges:

> . . . Petersen's lawyers falsely described the outcome of another, somewhat similar, case. Petersen states that they falsely told him that the defendant in that case, who had a comparatively stronger defense, was convicted after a trial and sentenced to life without parole.

(Am. Pet., Doc. 39 at 31).

In his *pro se* pleadings, Petersen described the details of this story as follows:

> A young woman and her boyfriend were camping with an older man when he began to get sexually violent. The pair fled the campsite but returned the next day to retrieve their property that was left behind. A shootout ensued that resulted in the death of the older man who, earlier that day, had chased a county attorney and his wife off of a nearby campground by brandishing a pistol and threatening to rape his wife and kill them. The young woman and her boyfriend were prosecuted for the older man's death. According to my public defenders, the young woman took the case to trial and was found guilty and sentenced to life without parole. Since her case seemed stronger than mine and she was supposedly found guilty, this distressed me greatly . . . .

Resp. to Order (Doc. 12) at 3-4. Petersen said he knew his lawyers lied because someone he later met at Montana State Prison "claimed to know the young woman" and "showed me a newspaper clipping that stated that she had plead guilty to her charge rather than go to trial and was sentenced to only five years of probation." (*Id.* at 4). Petersen also alleged:

9

> I confronted Mr. Putikka about this lie when I went back to Lake
> County Jail for court in Dec 2009. He denied his lies and told me that
> he was part of her defense team and would know. He would likely be
> the best person to ask to get the specifics of the case. Of course, don't
> take his word for it though.[1]

(*Id.*).

Lies by counsel would clearly constitute deficient performance, but the scenario Petersen described does not support an inference that he was prejudiced. In *Hill v. Lockhart*, the Supreme Court explained:

> [W]here the alleged error of counsel is a failure to investigate or
> discover potentially exculpatory evidence, the determination whether
> the error "prejudiced" the defendant by causing him to plead guilty
> rather than go to trial will depend on the likelihood that discovery of
> the evidence would have led counsel to change his recommendation as
> to the plea. This assessment, in turn, will depend in large part on a
> prediction whether the evidence likely would have changed the
> outcome of a trial. Similarly, where the alleged error of counsel is a
> failure to advise the defendant of a potential affirmative defense to the
> crime charged, the resolution of the "prejudice" inquiry will depend
> largely on whether the affirmative defense likely would have
> succeeded at trial.

*Hill*, 474 U.S. 52, 59 (1985). The inquiry, in other words, is objective. If a defendant alleges that he wanted to go to trial if the moon was new and he pled guilty because counsel falsely told him that trial was set for a date when the moon would be full, the defendant is entitled to relief only if a competently advised defendant could reasonably have chosen to go to trial. He is not entitled to relief if there is a reasonable probability that he personally would have gone to trial

---

[1] Notably, Petersen says nothing about the alleged boyfriend.

because the moon would have been new. Because a defendant is always free to disregard counsel's advice, the prejudice prong of the *Strickland* test depends on how a reasonable person, advised by competent counsel, might view the evidence.

Thus, whatever truth or lies are involved in the newspaper story, the law will relieve Petersen of the consequences of his guilty plea only if can show a reasonable probability he would have gone to trial had competent counsel advised him about his prospects of a mitigation defense. And none of Petersen's allegations of fact, in the entire corpus of his *pro se* submissions, suggests any possibility other than that Petersen deliberately planned over a significant period of time to execute Wilson. As is the case with Petersen's misguided theory of justification, the law simply does not consider that he might have been "lucky" enough to wind up with one "lawless decisionmaker" on the jury. There is no reasonable probability that a *reasonable* juror would find Petersen killed Wilson "under the influence of extreme mental or emotional stress for which there is *reasonable* explanation or excuse," as assessed from "the viewpoint of a *reasonable* person in [Petersen's] situation." Mont. Code Ann. § 45-5-103(1) (emphases added).

If Petersen had decided to reject legal advice and stand trial, he would have had every right to do so. But he may not do so now. The prejudice prong of the *Strickland* test is not met. This claim should be denied.

**C. Prosecution of Accomplices**

The Amended Petition alleges that "Petersen has alleged that his lawyers . . . falsely told him that if he chose to go to trial, his friends and family would likely be prosecuted" (Am. Pet., Doc. 39 at 31) and that his lawyers "grossly exaggerated this threat" (*id.* at 32). That is not what Petersen alleged in his original petition. Petersen said, "I was told by my public defenders that if I took my case to trial then some of my loved ones would be prosecuted as accomplices, despite their innocence" (Resp. to Order, Doc. 12 at 6), and that this advice was "possibly exaggerated." (*Id.*).

Petersen's submissions to this Court make it very clear he was concerned about what would happen to the persons who lawfully could have been prosecuted as his accomplices and he wanted others to believe those persons were innocent. A competent attorney would have advised Petersen that the State was entitled to prosecute anyone whom it had probable cause to prosecute, and it may well have had probable cause to prosecute people whom Petersen was determined to protect. (*See, e.g.*, Pet. Attachment, Doc. 1-1 at 12 (referring to Zack and Fran Forkin); Young App., Doc. 26-1 at 7 ¶ 13 para. 2; Frances Forkin Interview, Mar. 5, 2008, Doc. 9 DVD 1).[2] A competent attorney would have told Petersen that he and any alleged accomplices would likely be tried together before the same jury. A

---

[2] This DVD is among those submitted by Petersen acting *pro se*.

competent attorney would have explained that if anyone was an accomplice, they might reach an agreement with the State to testify against Petersen in exchange for not being charged. A competent attorney would have explained that Petersen could not testify in anyone else's defense without incriminating himself.[3] Pleading guilty was, in fact, a knowing, voluntary, and intelligent means of improving the legal positions of others who could have been prosecuted as accomplices. And that is precisely what Petersen understood it to be. (Resp. to Order, Doc. 12 at 6 ("I made my statements to protect these loved ones"); Sworn Statement, Doc. 8-5 at 1-5).

The facts Petersen alleges do not support an inference that anything counsel said about his possible accomplices was false (as only the Amended Petition alleges), nor do they support an inference that counsel did wrong in acquainting Petersen with the unavoidable and interconnected legal difficulties of his own situation and the situations of others who may have been involved in the crime. Neither prong of the *Strickland* test is met. This claim should be denied.

**D. Appeal**

It is not clear whether the Amended Petition intends to state a claim on the allegations, but it alleges that "Petersen states that he was told that if he took 'his

---

[3] It is worth noting as well that Petersen's statement at Fort Bragg was problematic with respect to his ability to protect others. Petersen said, "I told no one of my actions, either before or after the event took place." Sworn Statement, Doc. 8-5 at 2. But there was some indication that he did tell others (*see* Young App., Doc. 26-3 at 4-5 ¶¶ 7-9; Yonkin App. at 7 ¶ 13 para. 2). The State likely could have discredited any testimony Petersen might have given.

case to trial and lost,' he would be sentenced 'to life without parole with no possibility to appeal'" and that Petersen "was not aware that his lawyers misadvised him about . . . the benefits of pleading guilty." (Am. Pet., Doc. 39 at 31, 32).

At the change of plea hearing, the trial judge asked Petersen whether he understood that by pleading guilty he was "waiving a chance that a jury might find you guilty of a lesser offense and your right to appeal any guilty verdict by a jury." (Change of Plea Tr., Doc. 7-6 at 5:6-9). Petersen responded, "Yes, I do." (*Id.* at 5:10). The trial judge also asked Petersen whether anyone had "threatened you with any harsher punishment if you did not plead guilty." (*Id.* at 6:16-17). To that question, Petersen responded, "Yes." (*Id.* at 6:18). Counsel explained that "the State's recommendation, in lack of a guilty plea, would have been life, so I believe that's what Mr. Petersen is referring to." (*Id.* at 7:9-12). Petersen stated he was, indeed, referring to the threat of lawful punishment. (*Id.* at 7:13-14).

Petersen knew he had a right to appeal and would waive it by pleading guilty. Petersen knew he benefitted from a guilty plea by the difference between the State's recommendation for life in prison and the State's recommendation for 100 years in prison. Read in light of Petersen's statements at the plea colloquy, the facts alleged in the Amended Petition do not support a reasonable inference that Petersen's lawyers misadvised him about the benefits of pleading guilty. Neither

14

prong of the *Strickland* test is met. This claim, to the extent the Amended Petition makes it, should be denied.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Petersen's second and third claims for relief do not meet even the relatively low threshold for issuance of a COA. The facts Petersen alleges do not support an inference that his confession was "unlikely to have been the product of a free and rational will." His claim regarding counsel's alleged misrepresentation of the "strength" of N.'s probable testimony rests on the absurd notion that Petersen could have presented a defense of justification. Petersen's claim that counsel misrepresented the facts of another case involving mitigation could proceed only if there is a reasonable probability that competent counsel would have advised

15

Petersen he had a realistic prospect of acquittal on a mitigation theory. He did not. There was evidence that Petersen's friends and family knew his purpose and helped him procure and then rid himself of the gun and assisted him in leaving Montana. Various people were realistically vulnerable to prosecution, and any reasonable lawyer would have explained that to Petersen. Finally, Petersen knew he had a right to appeal if he were convicted at trial, because he stated he knew he was waiving that right by pleading guilty, and the Amended Petition failed to identify any fact of which he was incorrectly advised.

In addition, because none of Petersen's allegations make an adequate showing that trial counsel was ineffective, his claims are also procedurally barred as insufficiently substantial to warrant excusing his default under the rule of *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911 (2013).

There is no reason to encourage further proceedings on Claims 2 and 3 of the Amended Petition. A COA should be denied.

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

1. Claims 2 and 3 of the Amended Petition should be DENIED for lack of merit and DISMISSED WITH PREJUDICE as procedurally defaulted without excuse.

2. A certificate of appealability should be DENIED.

3. If the District Court adopts both this Recommendation and the Court's Recommendation as to Claim 1 of the Amended Petition, the Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

DATED this 10th day of August, 2015.

                                                   */s/ Jeremiah C. Lynch*
                                                   Jeremiah C. Lynch
                                                   United States Magistrate Judge