IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RONALD PETERSEN,<br><br>        Petitioner,<br><br>vs.<br><br>MARTIN FRINK; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>        Respondents. | Cause No. CV 12-125-M-DLC-JCL<br><br><br>FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE<br>(Claim 1) |

This case comes before the Court on Petitioner Petersen's application for writ of habeas corpus under 28 U.S.C. § 2254. Petersen, with counsel, filed an Amended Petition on October 31, 2014. Respondents ("the State") filed an Answer on January 14, 2015. Petersen filed a reply on February 17, 2015.

## I. Procedural Posture of the Case

Petersen's Amended Petition asserts three claims for relief:

1.     Trial counsel were ineffective because they failed to challenge the validity of the arrest warrant bearing the signature of Judge Christopher and dated January 27, 2008. (Am. Pet., Doc. 39 at 22-28; *see also* Arrest Warrant at 1-2, Doc. 26-6 at 7-8).

2.     Trial counsel were ineffective because they failed to challenge the admissibility of Petersen's statements and the fruits of the search of his barracks room on the ground that his statements and consent to search were involuntarily coerced by the threat that Petersen's friends and family members would otherwise be charged (Am. Pet. at 29-30).

1

3.    Petersen's guilty plea was the product of ineffective assistance of trial counsel because his counsel misrepresented facts and law to convince him to plead guilty. (Am. Pet. at 30-33).

Claims 2 and 3 are addressed separately. This document concerns the first claim.

## B. Procedural Defenses

On February 25, 2015, the Court indicated that the State's two procedural defenses lacked merit. (*See* Order, Doc. 46 at 2). First, the State claimed that counsel's allegations of ineffective assistance of counsel were waived because a guilty plea waives claims of constitutional violations preceding entry of a guilty plea, *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), and because Fourth Amendment violations are not actionable in federal habeas proceedings, *Stone v. Powell*, 428 U.S. 465, 494-95 (1986). (*E.g.*, Resp. to Am. Pet., Doc. 42 at 26-28). But a claim that counsel did not competently advise the defendant to plead guilty because counsel unreasonably and prejudicially failed to contest a Fourth Amendment violation is an exception to the general rule of *Tollett*. *See Tollett*, 411 U.S. at 268; *Blackledge v. Allison*, 431 U.S. 63, 75 (1977). It also contradicts the proviso in *Stone* requiring that a defendant have "an opportunity for full and fair litigation of a Fourth Amendment claim," *Stone*, 428 U.S. at 494; *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

Second, the State contended that Petersen's ineffective assistance claims

were procedurally defaulted, because the Montana Supreme Court held they were barred. (*E.g.*, Resp. to Am. Pet., Doc. 42 at 28-31). But this Court will follow Judge Johnston's reasoning in *Miller v. Kirkegard*, No. CV 13-13-GF-DWM-JTJ (D. Mont. May 20, 2015). Judge Johnston's Order held that *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012), *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911 (2013), and *Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013), apply in Montana. Together, those decisions excuse a federal habeas petitioner's default in state postconviction proceedings of two classes of claims: (1) substantial claims of ineffective assistance of appellate counsel, and (2) substantial claims of ineffective assistance of trial counsel that could not have been raised on direct appeal based on the record created at trial, provided the claims raised in federal court are "substantial" and the petitioner did not have effective counsel in postconviction proceedings in the trial court. (*See* Order, *Miller*, No. CV 13-13-GF, Doc. 50 at 6-26). The threshold is not a high one, *see, e.g.*, *Clabourne v. Ryan*, 745 F.3d 362, 376-77 (9th Cir. 2014).

For the reasons explained below, the validity of the arrest warrant and admissibility of Petersen's statements were indeed questionable. Petersen's first claim for relief is substantial enough to warrant excusing his procedural default under *Miller*.

### C. Motion for Summary Judgment

Because the State's procedural defenses do not apply, Petersen's claims are presented for decision on their merits. On June 8, 2015, the State moved for summary judgment. The motion was fully briefed on July 31, 2015.

A party is entitled to summary judgment when it demonstrates that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The only claim involving potential disputes of material fact is Petersen's first, alleging that his lawyers should have moved to suppress his post-arrest statements on the grounds that the warrant for his arrest was fabricated.

Under several layers and levels of burdens of proof – the burdens on moving and non-moving parties on summary judgment, the burdens on petitioners and respondents in a federal habeas proceeding, and the burdens on a defendant and the State at trial and in pretrial motion practice – the State's motion can be resolved by the answer to a straightforward question of fact: is there a genuine dispute that a state court judge authorized Petersen's arrest? The answer to that question depends upon the Honorable Deborah Kim Christopher, whose signature appears to be on the warrant for Petersen's arrest.

Petersen contends the record is still not sufficient to establish that Judge Christopher found probable cause to arrest Petersen for deliberate homicide, based on two applications for search warrants, or that Judge Christopher issued the

warrant authorizing his arrest. (*See, e.g.*, Resp. to Mot. for Summary Judgment, Doc. 61 at 29).[1] But neither party has suggested either that there exists in the record or that it may obtain any evidence contradicting Judge Christopher's averments that she "signed the arrest warrant" (Judge Christopher Aff., Doc. 54-1 at 7 ¶ 15; *see also id.* at 8 ¶ 17 (specifically naming Petersen)) that was presented to her at her home on a Sunday and was intended to be served on a soldier (*id.* at 5 ¶ 11) or that she found probable cause to support issuance of the warrant (*id.* at 9 ¶ 19; *see also id.* at 6 ¶¶ 12-13). Judge Christopher does not say, in one convenient declarative sentence, "Based on the second search warrant application, I found probable cause to support Petersen's arrest and authorized his arrest on Sunday, January 27, 2008, by signing the warrant attached as Exhibit 5." But her affidavit avers those facts in a piecemeal fashion.

As explained below, these facts defeat Petersen's claims.

## II. Relevant Facts

### A. The State Court Record

---

[1] Petersen disputes the State's assertion that "[t]he only facts . . . presented to Judge Christopher on January 27, 2008, when she issued . . . Petersen's arrest warrant were those facts presented in Young's application" for a second search warrant. (Pet'r Resp. to Statement of Undisputed Facts, Doc. 62 at 12 ¶ 23). To explain why he disputes this assertion, he cites a State motion for extension of time, which avers a negative: "Respondents at this time are informed and believe there exist no documents or recordings memorializing the warrant application to Judge Christopher." (Mot. for Extension of Time, Doc. 22 at 2). Presentation to Judge Christopher of a second search warrant application along with a warrant for Petersen's arrest is not inconsistent with the absence of any document or recording memorializing the fact of the presentation. But there is no need to resolve Petersen's objection, because that dispute is not material.

On December 31, 2007, around 4:30 a.m., someone entered Clyde Wilson's and Rainey Frick's home in Ferndale, Montana, shot the sleeping Wilson four times with a .45-caliber weapon, and fled.

Petersen's potential involvement in Wilson's murder became known to Lake County detectives on Saturday, January 26, 2008, when Petersen's brother Ryon Gates reported it. Gates explained that Petersen had been home on leave from the Army over the holidays but had since returned to Fort Bragg, North Carolina. Gates told detectives that before he left Montana, Petersen said he shot a man in Ferndale and left no trace but four .45-caliber shell casings. The caliber and number of the shots fired had not been released to the public. Gates also relayed information about the gun Petersen said he used; it belonged to Petersen's friend Zack Forkin, who planned to replace the barrel and firing pin (the two parts that could be forensically connected to spent casings) so he could keep the gun. Gates also said that his other brother, L., told him that, before Wilson's death, Petersen threatened to kill Wilson. The threat was motivated by an alleged incident in the previous autumn. N., a 13-year-old friend of Zack Forkin's sister, told Zack's sister about an alleged sexual assault on her by Wilson. (*See* Yonkin App., Doc. 26-3 at 4-6 ¶¶ 7-12).

Based on Gates's information, on Sunday, January 27, 2008, Detective Dan Yonkin applied to Lake County District Judge Deborah Kim Christopher for a

warrant to search the Forkins' residence for a .45-caliber firearm, components, or ammunition. (*Id.* at 2, 7). Judge Christopher countersigned the warrant application and issued the search warrant. The caption of the case was given as "State of Montana vs. John/Jane Doe." (*See id.* at 7; Search Warrant,[2] Doc. 26-4 at 1-2).

After (or possibly during) execution of the first search warrant, County Attorney Mitchell Young applied for a second search warrant. In the warrant application, Young averred that, when deputies arrived at the Forkins' home to execute the first search warrant, Zack Forkin asked them why they were there. Deputy Ewers said, "The gun you loaned to your friend was used in a homicide." The deputy then asked Zack what kind of gun it was, and "the defendant" – presumably meaning Zack – said it was "a .45 caliber pistol." Eventually, Zack stated he had loaned the gun to his friend Ronald Petersen. (Young App., Doc. 26-1 at 7 ¶ 13 para. 2).

Detectives did not find the gun, but they found its case, a test-fired casing, a holster, and a black ski mask. Frick had described the intruder as wearing "a dark colored ski cap folded up on the edges." (Yonkin App., Doc. 26-3 at 3 ¶ 5). Gates reported Petersen as saying that he had worn "his combat boots and fatigues" and "a dark colored camo[u]fl[a]ged face mask." (*Id.* at 5 ¶ 7). Officers also found an

---

[2] As filed, the document bears the handwritten notation "# 2." It is not clear when the label was added, but comparison of Yonkin's application and the associated warrant with Young's application and the associated search warrant demonstrates that the first of the two search warrants was issued on Yonkin's application. The "# 2" designation is incorrect.

envelope labeled "To N. from Ron." (Young App., Doc. 26-1 at 7 ¶ 13 para. 2).

Relying on Yonkin's application and these additional facts learned amid execution

of the first search warrant, Lake County Attorney Mitchell A. Young applied for

and obtained the second search warrant authorizing a further search in the Forkins'

residence for "clothing, footwear, trace evidence, letters, diaries and other

correspondence, computers and contents to include e-mail." (*See id.* at 2).

At some point in the hours between Sunday, January 27, and Monday,

January 28, 2008, authorities at Fort Bragg, North Carolina, received notice that a

warrant had issued from Lake County for Petersen's arrest. (Undisputed Facts,

Doc. 62 at 14 ¶ 31). The state court record does not show how that warrant was

obtained.

After authorities at Fort Bragg executed the purported arrest warrant,

Petersen, under custodial interrogation, made at least three voluntary self-

incriminating statements. Petersen said he used 'skills he learned in the military' to

creep through a broken door into an undefended home in an isolated rural area in

the middle of the night to shoot a man who was asleep. Petersen's statements were

detailed, internally consistent, and coherent. Petersen decided to kill Wilson. As

Petersen said, "I did what I felt was morally right, although obviously not legally

right." (Sworn Statement, Doc. 8-5 at 1).

As voluntary and conclusive as Petersen's statements were, they would have

been inadmissible if Petersen's custody was based on a false warrant. Contrary to the State's claim in this Court that the irregular and incomplete state court record was "sufficient to dispel Petersen's claims," Reply (Doc. 65) at 7, the state court record did not make a *prima facie* showing that the warrant authorizing Petersen's arrest was lawfully obtained or even genuine. And if the warrant was not lawfully obtained and not genuine, then not only Petersen but someone acting on behalf of the State did what they believed to be "morally right, although obviously not legally right."

## B. The Warrant

The state court record does not contain a written application specifically for the purpose of authorizing Petersen's arrest. There is, however, an arrest warrant in the record. Under a caption naming the State as plaintiff and Petersen as the defendant, the text on the first page of the warrant stated:

> An Information has been filed before me by Lake County Attorney Mitchell A. Young, charging the Defendant, RONALD PETERSEN, with the offense of DELIBERATE HOMICIDE, a Felony, under MCA 45-5-102.
> YOU ARE ORDERED to arrest the above named Defendant during the daytime or during the nighttime and bring him before the nearest and most accessible judge of this county, or if the arrest is made in another county, before a judge of that county, without unnecessary delay.
> ///

On its next page, the warrant stated:

> ///

9

The Defendant is to be held without bail.

DATED this __27th__ day of January, 2008.

> __/s/ Deborah Kim Christopher__
> JUDGE OF THE DISTRICT COURT
> D.K. Christopher, Presiding

Though typed here, the date and the signature were written by hand. (*See* Arrest Warrant, Doc. 26-6 at 7-8).

In addition to the state court record's lack of clarity as to the process by which the warrant was issued, two aspects of the warrant itself made the record ambiguous rather than clear. First, the text of the warrant expressly referred to "[a]n Information filed before me," that is, the judge issuing the warrant. Only one Information naming Petersen was ever filed in the state court. It was filed on Tuesday, January 29, 2008, two days after Petersen was arrested and made self-incriminating statements. The Order granting the State's application to file the Information was signed on the same day, Tuesday, January 29, by Judge C.B. McNeil, not Judge Christopher. (*See* Order, Doc. 7-2 at 2; Information, Doc. 7-4 at 1-2). The affidavit filed in support of the Information was filed on Monday, January 28, 2008. It concluded with the following paragraphs:

> On January 28, 2008, Peterson [sic passim] was arrested by criminal investigators from Fort Bragg, where Peterson is stationed. Peterson gave a statement to investigators in which he described the shooting of Clyde Wilson. During the statement Peterson revealed information that had not been released to the public and demonstrated his knowledge of the incident.

From those facts, I believe there is probable cause to believe that within the jurisdiction of this Court, the Defendant, RONALD PETERSEN [sic], committed the offense of DELIBERATE HOMICIDE, a Felony.

     /s/ Mitchell A. Young     
MITCHELL A. YOUNG
Lake County Attorney

(Aff. in Supp. of Information, Doc. 7-2 at 6). The affidavit was signed and

notarized on Monday, January 28, 2008. (*Id.* at 6-7). Because this affidavit refers

to a statement Petersen made after his arrest, it could not have been the document

intended to support any application for the arrest warrant. The State concedes that

no other Information has been located. Therefore, when the body of the arrest

warrant referred to "an Information . . . filed before me," it referred to an

Information that was *not* filed and perhaps never existed.

The second troublesome aspect of the arrest warrant was that the date and

signature lines were entirely separate from the text and caption of the warrant

where Petersen is named as the person to be arrested. Nothing on the judge's

signature page connected her signature with Petersen. While this page separation

obviously does not make the warrant invalid, it had an unfortunate synergistic

effect under the facts of this case. If, on January 27, 2008, Judge Christopher had

authorized the arrest of someone else who was to be held without bail – say, for the

sake of argument, Zack Forkin, who was vulnerable to a charge of deliberate

homicide by accountability – it would have been much too easy for an overzealous

officer or prosecutor to use the judge's signature on a warrant authorizing Forkin's arrest to fabricate a warrant for Petersen's arrest without the judge's knowledge.

In sum, had things proceeded as they normally do, the Information referred to in the text of the arrest warrant would have been dated January 27, 2008, but filed on Monday, January 28, 2008, along with a motion for leave to file an Information and an affidavit in support that made no mention of Petersen's post-arrest statements. (*See* Case Register Report, Doc. 7-1 at 1). Had these routine steps been taken, the record would constitute *prima facie* evidence of the arrest warrant's validity, and any competent defense attorney might reasonably have passed on to other issues. But that is not the state of the record.

### C. Evidence Submitted in This Court

On April 29, 2015, in connection with proceedings in this Court, Judge Christopher executed an affidavit averring, in pertinent part:[3]

> 11. Detective Yonkin and County Attorney Mitch Young presented two search warrant applications (both of which included an affidavit, signed in my presence) and an arrest warrant at my home on a day that was not a regular business day as I knew they would not file the documents at the time they signed them. After signing the documents and noting the suspect's military status, I told law enforcement present (based on my professional knowledge of criminal procedures involving military personnel as a former JAG officer) they would need to coordinate with the military to attempt to serve or arrest a soldier. I am sure I told them they should contact at least the JAG

---

[3] Petersen asks the Court to disregard or strike portions of Judge Christopher's affidavit. (*See* Objection to Affidavits, Doc. 60 at 5). Without deciding whether Petersen's request is well-founded, the Court will disregard those portions of the affidavit.

office on post to obtain the needed assistance before they attempted to arrest a soldier on post and paperwork would likely be required.

. . .

13. I specifically recall reviewing the two search warrant affidavits on January 27, 2008, which was a Sunday and consistent with my memory not a business day. My signature on the two search warrant applications also confirms I read the affidavits in support of the search warrants, as does my signature on the search warrants themselves.

. . .

15. . . . I cannot positively state I was presented with the motion for leave to file an information and order granting such at the time I reviewed and signed the arrest warrant.

. . .

19. When reviewing applications for search warrants or arrest warrants, in 2008, and still to this day, it remains my normal practice to double check the name, plate number or physical and listed address cited in the affidavit against the warrant itself to be sure the place to be search [sic] or the person to be arrested matches the facts alleged in the probable cause.

20. My normal practice when reviewing applications for search warrants and/or arrest warrants is to focus on the factual basis supporting the request and the place/person named but I am not as carful to review the "boilerplate" language that routinely appears in legal documents. Such "boilerplate" language includes the opening phrase from Petersen's arrest warrant ("An Information has been filed before me . . . .").

(Judge Christopher Aff., Doc. 54-1 at 2, 6-7, 9).

Petersen contends that it is unclear whether Judge Christopher actually

remembers all of the events she describes or whether she infers important details

13

based on the fact that her signature appears to be on the warrant. (*See, e.g.*, Resp. to Mot. for Summary Judgment, Doc. 61 at 27-28). But that kind of clarity is seldom, if ever, attainable. Judge Christopher states that she was presented with "two search warrant applications and an arrest warrant." She "specifically recall[s] reviewing the two search warrant affidavits." She remembers that she did these things at her home on a day that was not a business day. When she "signed the documents," she "noted the suspect's military status." She states, "I reviewed and signed the arrest warrant."

### III. Analysis

Petersen alleges that counsel ineffectively advised him to plead guilty without challenging the arrest warrant or seeking exclusion of the self-incriminating statements Petersen made after his arrest. Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Petersen must show (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. In the context of a guilty plea, Petersen must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[T]here is no reason . . . to address both

components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

The ambiguous nature of the state court record as it pertains to the arrest warrant would have been obvious to a competent attorney reviewing the file to determine whether the State complied with federal constitutional requirements. This review is a core function of defense counsel. To take just one example, in *Rompilla v. Beard*, 545 U.S. 374 (2005), defense counsel knew the prosecution, at sentencing, would rely in part on the defendant's prior conviction for rape and assault. Counsel failed to obtain and review the court file on that conviction. The Supreme Court held that defense counsel may not simply assume that matters are regular and occurred in the way the prosecution represents. Counsel must review files and reported facts to verify them and to determine whether they might present a picture different from that presented by the prosecution. Discussing the facts of the case before it, the *Rompilla* Court said:

> Reasonable efforts certainly included obtaining the Commonwealth's own readily available file on the prior conviction to learn what the Commonwealth knew about the crime, to discover any mitigating evidence the Commonwealth would downplay, and to anticipate the details of the aggravating evidence the Commonwealth would emphasize. Without making reasonable efforts to review the file, defense counsel could have had no hope of knowing whether the prosecution was quoting selectively from the transcript, or whether there were circumstances extenuating the behavior described by the victim.

*Rompilla*, 545 U.S. at 385-86 & n.4 (incorporating internal footnote into text).

If counsel in that case had a duty to review the court file on the defendant's prior conviction, it is certainly no stretch to say that counsel has a duty to review the court file in the case that counsel is appointed to defend. Indeed, as the Court noted within the quoted passage, "The ease with which counsel could examine the entire file makes application of this standard correspondingly easy. Suffice it to say that when the State has warehouses of records available in a particular case, review of counsel's performance will call for greater subtlety." *Id.* at 386 n.4. Petersen's case was not a warehouse case.

No competent attorney could fail to realize the evidentiary significance of Petersen's statements. No competent attorney could fail to review, however briefly, the circumstances under which he made those statements, including the manner in which he came to be in custody. No attorney performing competently could look at the arrest warrant and the affidavit in support of the only Information in the state court record without realizing something might be amiss. If defense counsel failed to recognize the potential infirmities of the arrest warrant and failed to follow up in any way, then they were not functioning as the counsel guaranteed by the Sixth Amendment. If Petersen's arrest warrant was invalid under the Fourth Amendment because his arrest was not based on a finding of probable cause by a neutral and detached magistrate, his post-arrest statements would be fruit of the poisonous tree, inadmissible against him at trial. In turn, his chances of acquittal at trial would

improve significantly. Petersen might reasonably have chosen to forego a guilty plea and stand trial.

But Petersen was not arrested on an invalid warrant. Throughout this proceeding, the heart of this claim has been Petersen's allegation that, for whatever reason and whatever might have occurred instead, Judge Christopher did not actually issue a warrant for Petersen's arrest on Sunday, January 27, 2008. The State has now produced competent evidence that Judge Christopher issued the warrant. Therefore, this Court can only conclude that, had Petersen's counsel challenged the arrest warrant, the State would have proved the warrant valid, and the evidentiary picture against Petersen would have remained unchanged. Counsel's failure to challenge the warrant did not deprive Petersen of the opportunity to make a voluntary, knowing, and intelligent choice between pleading guilty and going to trial.

Petersen's habeas counsel, handed lush alfalfa, understandably makes a lot of hay out of the State's previous attempts in this proceeding to stand on a plainly deficient state court record. Petersen also reasonably questions how it is possible for the State to say both that there was no other Information and County Attorney Young probably prepared one and presented it to Judge Christopher. As he puts it, "[t]he State's tergiversation defies explanation." (Resp. to Mot. for Summary Judgment, Doc. 61 at 7). And both parties are correct that Montana law requires

17

prosecutors to present a charging document to a judge along with a request for an arrest warrant. Mont. Code Ann. §§ 46-6-201, -211(1). Still, reasonable as it is for Petersen to dispute the State's assertions of fact on several points, the disputes he has with the State are not material.

A state court could not have suppressed Petersen's statements on the grounds that County Attorney Young did not present an Information or affidavit in support of it to Judge Christopher. Montana law's connection between the filing of a criminal charge by complaint or information and issuance of an arrest warrant is designed to ensure that an arrest warrant is issued only when a neutral and detached magistrate finds probable cause to believe that the person to be arrested has committed a specific crime. *See, e.g.*, Mont. Code Ann. §§ 46-11-110, -201(2), (3); *see also Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411, 416-17 (Mont. 1995). Under state law, "the exclusionary rule will not apply to violations of statutory requirements unless the violation affects the accused's substantial rights." *State v. Kelm*, 300 P.3d 687, 692-93 ¶ 24 (Mont. 2013); *State v. West*, 968 P.2d 289, 290-91 ¶¶ 5-9 (Mont. 1998)).

Regardless of whether Young did or did not present a complaint or information to Judge Christopher, or whether the Judge relied on the information contained in the two search warrant applications, the Judge nonetheless found probable cause existed to believe Petersen committed the crime of deliberate

homicide, and the Judge signed the arrest warrant. (Judge Christopher Aff., Doc. 54-1 at 5 ¶ 11, 6 ¶¶ 12-13, 7 ¶ 15 (fourth sentence), 8 ¶ 17 (first clause of second sentence), 9 ¶ 19). The warrant was real. It was not fabricated by Young or Yonkin or some other overzealous, self-justifying prosecutor or officer. The State applied for leave to charge Petersen the day after his arrest, and he was formally charged the day after that. Petersen suffered no identifiable prejudice of any kind. His substantial rights were not affected.

While counsel can indeed be constitutionally ineffective in violation of the Sixth Amendment based on a failure to identify a valid claim or defense under state law, Petersen did not have a valid claim or defense under any law. The State's probable violation of state law in relation to the issuance of the warrant afforded no basis for suppression of his post-arrest statements. The warrant for Petersen's arrest was issued and executed in conformity with the Fourth Amendment, and federal habeas relief is not available for a violation of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

There is no need for further proceedings on this claim. Whether counsel missed the warrant's defects or not, Petersen cannot show a reasonable probability that the outcome of pretrial proceedings would have been different or that he would not have pled guilty if he had known of and challenged the warrant's

defects. The State is entitled to judgment in its favor on Claim 1. Its motion for summary judgment should be granted.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Petersen committed the most deliberate of deliberate homicides. Under custodial interrogation, he boasted about it. Even so, if the warrant for his arrest was fabricated, as he claimed, his statements would not have been admissible in evidence against him. But following development of the record in this Court, Petersen's claims, which previously appeared substantial, are shown to be without substance. A state court judge found probable cause and authorized Petersen's arrest. His counsel, therefore, could not have obtained suppression of the self-incriminating statements he made after his arrest. Petersen does not make a

showing of any substance that he was deprived of his Sixth Amendment right to the effective assistance of counsel or that his guilty plea was involuntary as a result of ineffective assistance. There is no reason to encourage further proceedings. A COA should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. The State's motion for summary judgment (Doc. 57) should be GRANTED.

2. Claim 1 of the Amended Petition (Doc. 39) should be DENIED for lack of merit.

3. A certificate of appealability should be DENIED.

4. If the District Court adopts both this Recommendation and the Court's Recommendation as to Claims 2 and 3 of the Amended Petition, the Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

DATED this 10th day of August, 2015.

_/s/ Jeremiah C. Lynch_
Jeremiah C. Lynch
United States Magistrate Judge